UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                      PLAINTIFF

v.                                          CRIMINAL ACTION NO. 3:11CR-10-S

ALFREDO CARRILLO-ALVARADO
JUAN LANDEROS-SANDOVAR
LUIS SALCIDO-GUZMAN
ARTURO MONTERO                                           DEFENDANTS

## **MEMORANDUM OPINION AND ORDER**

The United States Magistrate Judge held a number of evidentiary hearings and issued Findings of Fact, Conclusions of Law, and Recommendations ("reports") concluding that various motions to suppress evidence should be denied. For the reasons set forth below, the objections to the findings of the magistrate judge will be rejected, the reports will be accepted and adopted, and the motions to suppress evidence will be denied.

The magistrate judge issued 3 reports:

DN 220 addressing the motions to suppress evidence filed by Juan Landeros-Sandovar (DN 104) and Alfredo Carrillo-Alvarado (DN 90);

DN 222 addressing the motion to suppress evidence filed by Luis Salcido-Guzman (DN 130);

DN 223 addressing the motion to suppress evidence filed by Arturo Montero (DN 172).

To briefly summarize,[1] the premises of 1214 Outer Loop had been under investigation since 2009. The body shop on the property was suspected of operating a "chop shop" for stolen vehicles and providing a location for drug trafficking activities. A tip was received by Officer Eric Culver at approximately 7:00 p.m. on December 15, 2010. Various officers were called in to assist with the interception of a semi-trailer load of drugs said by a confidential informant to be arriving at the Outer Loop location on that evening. It was anticipated that the load would be divided up and moved from the location quickly.

1214 Outer Loop is located on the south side of, and immediately adjacent to the Outer Loop, an east-west highway. The property itself is bounded on three sides by a chain link fences and on the fourth side by a drainage ditch. The only means of ingress and egress was one side road, which also provided access to a number of other businesses. This road was two to three blocks long. By this time in the evening, no other businesses which utilized the road were open. As there was wintry weather that night, there was little traffic on surrounding roads. While driving over an elevated portion of the Outer Loop and looking down onto 1214 Outer Loop, Detective James observed a number of vehicles and a semi-trailer on the property.

Upon organizing law enforcement personnel at a designated staging area, one officer (Lee) took up surveillance at a concealed vantage point. He observed a semi-trailer matching the description given by the confidential informant, and a forklift being used to offload heavy pallets

---

[1] To the extent that the summary is inconsistent in any way with specific findings of fact made by the magistrate judge, the magistrate judge's findings control. This court has attempted to offer an overview of the events, in order to provide context for review of the defendants' objections. With the exception of Montero, the objections do not challenge specific factual findings, but rather challenge the conclusion that these facts established reasonable suspicion for the investigative stops. Montero urges that Detective James' testimony was not credible. This argument was raised by Montero and rejected by the magistrate judge. The magistrate judge's findings of fact are given deference, and we have been shown no ground to question them.

or heavy items. Lee could not identify the cargo being unloaded nor could he see the vehicles into which the containers were placed.

Detective Culver left to obtain search warrants for the premises and a S.W.A.T. team was assembled at a second staging area in preparation to execute them. But at approximately 9:30 p.m. a convoy of vehicles began leaving the premises. There were five vehicles in all, leaving via the otherwise deserted access road. There were two white cargo vans, a gray Honda Odyssey minivan, a maroon Toyota minivan, and a white 4-door sedan. The vehicles split, with each white van traveling in tandem with a minivan onto the main road and then onto the Gene Snyder Freeway, I-265. Most of the vehicles were stopped a number of miles down the road. Large quantities of marijuana were seized from the white vans, and the occupants of those vans and the gray and maroon minivans which accompanied them were placed under arrest. The white sedan, however, pulled away and was not stopped. We need not address the facts surrounding the vehicle searches or the arrests. The magistrate judge has already made detailed factual findings concerning these events.

After these seizures and arrests but prior to the execution of the warrants, Detective Lee observed and reported that a red Ford pick-up truck was "in motion." Detective James returned to the area and observed the red truck exit onto Outer Loop via the same side road used by the other five vehicles. As with the other stops, he followed the truck for several miles, then conducted an investigative stop. Montero and a passenger were arrested.

The vehicle stops were conducted without warrants. The magistrate judge found, and the court agrees, that the stop of each vehicle was made upon reasonable suspicion that criminal activity was afoot and that the individuals in these vehicles were involved in such criminal activity.

At the time of the stops, Detective Culver was in the process of obtaining search warrants, but did not have them in hand at the time vehicles began to leave the premises. The decision had been made that, should such a situation arise, the vehicles would be stopped and the occupants questioned.

The affidavits produced in support of the subsequently-executed warrants were previously upheld by this court over objections of unreliability and staleness. (DN 224). The background information related in the affidavits concerning the ongoing nature of the investigation and the suspected criminal activity at the body shop was relayed to the various officers (Keller, O'Toole, James, Morgan, Lee, Schardein, Dennis, Braden, Jilek, Boenlein) involved in the events of that evening. We need not revisit the precise information known to each individual officer, as the magistrate judge's reports carefully recount the manner in which each officer was apprised of some or all of this historical information. The officers obtained additional information either through their own observations or via continuously monitored radio transmissions from other officers as events unfolded on December 15th beginning at approximately 7:00 p.m.

Four suppression motions challenge the grounds for the vehicle stops. Defendant Guzman was a passenger in one of the white cargo vans. That van was observed traveling in tandem with the maroon minivan. Defendant Sandovar was driving the other white cargo van. This second white van was seen traveling in tandem with the gray minivan which was driven by defendant Alvarado. The red Ford pick-up truck was being driven by defendant Montero.

The defendants[2] object to the magistrate judge's conclusions that the officers in question had reasonable suspicion to conduct an investigatory stop of the vehicles in which they were traveling.

---

[2]Sandovar, Alvarado, Guzman and Montero

They note that there was no prior information identifying particular individuals or vehicles which would be involved with the shipment of drugs. Additionally, Detective Lee could not see from his surveillance location that the cargo which was being taken off the truck and loaded into vehicles was a drug shipment. The defendants contend, therefore, that the driving of vehicles from the premises on the evening of December 15th was seemingly innocent activity. However, in viewing the totality of the circumstances, reasonable suspicion clearly arose to warrant investigatory stops of the vehicles.

The information known to the officers which provided reasonable suspicion that the defendants were engaged in drug trafficking activity included (1) the prior investigative history of which the officers had been made aware, (2) the observations of Detective Lee, communicated by radio, that cargo was being off-loaded from a semi-trailer and broken up into smaller loads and reloaded into cargo van, as specifically anticipated by the confidential informant, (3) the officers' observations on the scene that five vehicles were leaving the premises after being loaded with the semi-trailer's cargo, split off, and began traveling in tandem; and (4) the officers' prior experience in investigating drug trafficking activity.

The informant in this case had proven to be reliable. During the many months of investigation into on-going activities at 1214 Outer Loop, detectives had been able to corroborate much information provided to them by the informant, including patterns of activity on the premises, as well as information concerning the individuals who owned and/or operated the business. Despite the fact that surveillance revealed a high volume of traffic, it was determined in August of 2009 that the owner of Yanci Auto Repair, Yanci Cruz-Lopez, had not reported any Kentucky income.

Approximately three weeks prior to the events of December 15, detectives pursued a tip from this informant that a load of drugs was going to arrive at 1214 Outer Loop. The officers saw activity at the location, but a load was not discovered. Officers stopped a van which was leaving the premises. A narcotics dogs alerted to the presence of drugs and there was a strong odor of marijuana present, but the van was empty. The officers believed that they had missed the load.

Additionally, the informant had provided information to Detective Culver in the past which resulted in the identification of a number of individuals in another investigation.

With respect to the information about the December 15 shipment, (1) While the officers did not see the semi-trailer arrive at 1214 Outer Loop, a semi-trailer exactly matching the informant's description was observed at the location within hours of Detective Culver's receipt of the tip; (2) The cargo was not being taken into the garage as one might expect if it was cargo for the auto body business; Rather, it was being off-loaded from the semi-trailer and directly reloaded into cargo vans; (3) Despite the fact that it was after business hours and the weather was inclement, the cargo was offloaded and removed from the premises immediately that evening; and (4) A convoy of vehicles including two cargo vans departed from the property, the vans and the minivans traveling in tandem; which indicated to the experienced officers that drugs were being moved.

The officers possessed the collective knowledge and experience that

(1) Often shipments of drugs are received and immediately broken into smaller quantities and removed from the arrival location to avoid detection, and

(2) When transporting drugs, often vehicles travel in tandem so that one may act as a lookout or be available to assist if there is a problem during transportation.

The departure of the group of five vehicles from a location at which a suspected drug shipment had been observed was, alone, clearly suspicious. The observation that cargo vans had

been loaded directly from a semi-trailer, and that the vans left immediately, traveling in tandem, after business hours, on a wintry night made the activity even more suspect. The magistrate judge, having looked at the totality of the circumstances from the point of view of each of the officers, found that each officer making a stop had an objectively reasonable suspicion of criminal activity at the time the stop was made. He thus concluded that the warrantless stops did not violate the defendants' Fourth Amendment rights, and recommended that the motions to suppress be denied. This court finds no error in the magistrate judge's reasoning and finds that the conclusions are fully supported by the record evidence.

Motions having been made and for the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the Findings of Fact, Conclusions of Law, and Recommendations of the United States Magistrate Judge (Dns 220, 222, 223) are **ACCEPTED AND ADOPTED IN THEIR ENTIRETY** and the motions of the defendants, Juan Landeros-Sandovar, Alfredo Carrillo-Alvarado, Luis Salcido-Guzman, and Arturo Montero, to suppress evidence (Dns 90, 104, 130, 172) are **DENIED.**

**IT IS SO ORDERED.**

February 2, 2012

**Charles R. Simpson III, Judge**
**United States District Court**